IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DAVID WALLACE CROFT and SHANNON KRISTINE CROFT, AS PARENTS AND NEXT FRIEND OF THEIR MINOR CHILDREN; JOHN DOE and JANE DOE, AS PARENTS AND NEXT FRIEND OF THEIR MINOR CHILDREN, | § § § § § § § § § | CIVIL ACTION NO. 3:07-CV-1362-K |
| Plaintiffs, | § § | |
| V. | § § | |
| RICK PERRY, GOVERNOR OF THE STATE OF TEXAS, | § § § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are the parties' cross-motions for summary judgment (Doc. Nos. 25 and 30) regarding the constitutionality of the Texas Pledge of Allegiance. Because the words "under God" in the Texas Pledge of Allegiance do not violate the Establishment Clause of the First Amendment, the Court **GRANTS** Defendant's motion for summary judgment. Consequently, Plaintiff's motion is **DENIED**.

**I. Factual and Procedural Background**

Plaintiffs David Wallace Croft and Shannon Kristine Croft and two anonymous parents as parents and next friend of their minor children (collectively "Plaintiffs") bring this action challenging the Pledge of Allegiance to the Texas state flag as an

unconstitutional establishment of religion.

Defendant Rick Perry ("Perry") is named in his official capacity as the Governor of Texas. On June 15, 2007, Governor Perry signed into law an amendment to the Texas Pledge of Allegiance inserted the words "one State under God."

Plaintiffs assert the insertion of "under God" in the Texas pledge in 2007 violates the Establishment Clause of the First Amendment to the United States Constitution and filed the instant suit seeking an injunction against Governor Perry. The Court subsequently denied Plaintiffs' request for a preliminary injunction after a hearing on the matter, finding that Plaintiffs had not shown they would suffer irreparable injury if the injunction was not granted.

No material facts are in dispute, and the parties seek judgment as a matter of law. Plaintiffs seek a declaratory judgment that Texas Government Code § 3100.101 violates the Establishment Clause of the First Amendment as incorporated by the Fourteenth Amendment. Defendant's cross-motion for summary judgment seeks a declaratory judgment that the Texas Pledge of Allegiance is constitutional as written.

**II. Legal Standard**

Summary judgment is appropriate when the pleadings, affidavits and other summary judgment evidence show that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 322–25. Once a movant makes a properly supported motion, the burden shifts to the nonmovant to show that summary judgment should not be granted; the nonmovant may not rest upon the allegations in the pleadings, but must support the response to the motion with summary judgment evidence showing the existence of a genuine fact issue for trial. *Id.* at 321–25; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255–57 (1986). All evidence and reasonable inferences must be viewed in the light most favorable to the nonmovant. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

### III. Analysis

As a threshold matter, Plaintiffs' standing must be established before any analysis on the merits of their claim. Plaintiffs are the parents of minor children attending Texas public schools, a fact evidenced by a supplementary affidavit by the Crofts that their three minor children are enrolled in the Carrollton-Farmers Branch Independent School District. Counsel for the "Jane Doe" Plaintiff filed a similar affidavit stating that her minor children are enrolled in a Texas public school. The Crofts were found to have standing in a companion case to this one. *See Croft v. Perry*, — F.3d — , 2009 WL 659347, at *9 (5th Cir. Mar. 16, 2009) (finding standing in challenge to Texas'

"moment of silence" statute).  Thus, the Court turns to the merits of the parties' arguments.

Plaintiffs do not explicitly state whether their challenge to the amended Texas pledge is facial or "as applied" to them.  Because they have shown no evidence of the specific manner in which the statute is administered unconstitutionally against them to support an "as-applied" challenge, Plaintiffs here mount a facial challenge to the Texas Pledge.  To prevail on a facial challenge, "plaintiffs must show that under no circumstances could the law be constitutional." *Barnes v. State of Mississippi*, 992 F.2d 1335, 1343 (5th Cir. 1993).

### A.   The Pledge(s) of Allegiance

#### 1.   The National Pledge — One Nation under God

The United States' Pledge of Allegiance was enacted in 1942, during World War II, in order "to codify and emphasize the existing rules and customs pertaining to the display and use of the flag of the United States of America." H.R.Rep. No. 2047, 77th Cong., 2d Sess. 1 (1942).  The Pledge was amended in 1954, and it now reads:

> I pledge allegiance to the flag of the United States of America, and to the Republic for which it stands, one Nation *under God*, indivisible, with liberty and justice for all.

4 U.S.C. § 4 (emphasis added).  As Defendant notes, the legislative history states that the inclusion of the words "under God" in the national pledge "reflects the traditional

concept that our Nation was founded on a fundamental belief in God" and cites the Declaration of Independence, the Gettysburg Address, William Penn, and Supreme Court precedent to demonstrate the historical continuity of the notion. H.R. Rep. No. 1693 (1954), *as reprinted in* 1954 U.S.C.C.A.N. 2339, 2340.

Upon signing the bill that incorporated the words "under God," President Eisenhower declared, "From this day forward, the millions of our school children will daily proclaim in every city and town, every village and rural school-house, the dedication of our Nation and our people to the Almighty." 100 Cong. Rec. 8618 (1954) (statement of Sen. Ferguson incorporating signing statement of President Eisenhower).

### 2. The Texas Pledge — One State under God

The Texas Pledge of Allegiance was created in 1933, originally reading: "Honor the Texas Flag of 1836; I pledge allegiance to thee, Texas, one and indivisible." Act of April 19, 1933, 43d Leg., R.S., ch. 87, § 3, 1933 Tex. Gen. Laws 186, 187. The reference to the Texas flag of 1836 was deleted in 1965. Act of April 2, 1965, 59th Leg., R.S., ch. 55, 1965 Tex. Gen. Laws 138.

The Texas pledge was amended last in 2007. As recited by schoolchildren today, the Texas Pledge of Allegiance reads:

> Honor the Texas flag; I pledge allegiance to thee, Texas, *one state under God*, one and indivisible.

TEX. GOV'T CODE § 3100.101 (emphasis added). It is to be said after the Pledge

of Allegiance to the American flag. *Id.* § 3100.103. Every school district in the state must require students to recite the pledge of allegiance to the United States and Texas flags. TEX. EDUC. CODE § 25.082(b). On written request by a student's parent or guardian, however, a school district must excuse that student from reciting either pledge of allegiance. *Id.* § 25.082(c).

Defendant cites statutes from forty-three states providing for recitation of the national pledge by public schoolchildren. Of these, thirteen have additional pledges unique to their individual states. Five states—Kentucky, Louisiana, Mississippi, Tennessee, and Texas—have pledges that make some reference to "God" or divine grace. KY. REV. STAT. ANN. § 2.035 (2007); LA. REV. STAT. ANN. § 49.167 (2007); MISS. CODE ANN. § 37-13-7 (2007); TENN. CODE ANN. § 4-1-329 (2007); TEX. GOV'T CODE § 3100.101.

### B. Establishment Clause

The Supreme Court's general framework for analyzing Establishment Clause challenges comes from *Lemon v. Kurtzman*, 403 U.S. 602 (1971). The three-pronged *Lemon* test requires (1) "the statute must have a secular legislative purpose;" (2) "its principle or primary effect must be one that neither advances nor inhibits religion;" and (3) "the statute must not foster an excessive government entanglement with religion." *Id.* at 612–13 (internal quotations omitted). The parties here do not directly argue the

second and third prongs of the *Lemon* test. Instead, they appear to agree, the relevant inquiry focuses on the first prong—purpose—along with an examination of whether the statute unconstitutionally endorses religion, whether the statute favors one religious sect over another, and whether schoolchildren are coerced into affirming a religious belief. Because this analysis necessarily includes an examination of the statute's effects and possible excessive government entanglement, the Court will review these four points of inquiry raised by the parties.

To this end, a statute must not unconstitutionally endorse religion. *Lynch v. Donnelly*, 465 U.S. 668, 688 (1984) (O'Connor, J., concurring). A statute must not discriminate among religious sects without showing a compelling governmental interest and a "close fit." *See Larson v. Valente*, 456 U.S. 228, 247 (1982). And a statute must not "coerce anyone to support or participate in religion or its exercise." *Lee v. Weisman*, 505 U.S. 577, 587 (1992).

"The [Establishment Clause], however, does not say that in every and all aspects there shall be a separation of Church and State." *Zorach v. Clauson*, 343 U.S. 306, 312 (1952). Two circuit courts have found that "under God" in the national pledge of allegiance is constitutional. *Myers v. Loudon County Pub. Sch.*, 418 F.3d 395 (4th Cir. 2005); *Sherman v. Cmty. Consol. Sch. Dist. 21*, 980 F.2d 437 (7th Cir. 1992). The Fifth Circuit has noted that "[r]eferences to God in a motto or pledge, for example, have

withstood constitutional scrutiny; they constitute permissible 'ceremonial deism' and do not give an impression of government approval." *Doe v. Tangiapahoa Parish Sch. Bd.*, 473 F.3d 188, 198 (2006), *vacated on standing grounds*, 494 F.3d 494 (5th Cir. 2007) (en banc); *see also Murray v. City of Austin*, 947 F.2d 147, 154–55 (5th Cir. 1991) ("[G]overnment use of religious acknowledgment, if not religious belief, is allowed: e.g., . . . the pledge of allegiance . . . .").

Plaintiffs attempt to create the impression of a circuit split by citing the Ninth Circuit's opinion in *Newdow v. U.S. Congress*, 292 F.3d 597 (9th Cir. 2002). Any reliance on the Ninth Circuit's original opinion in *Newdow* is misplaced, however. Although a Ninth Circuit panel found the words "under God" unconstitutional, the Supreme Court overturned that decision because the plaintiff lacked standing. *See Elk Grove Unified School Dist. v. Newdow*, 542 U.S. 1, (2004) (declining to reach the merits because the noncustodial parent plaintiff "lacks prudential standing to bring this suit in federal court"). A subsequent Ninth Circuit opinion withdrew the panel's finding that the phrase "under God" in the national Pledge of Allegiance is unconstitutional, instead finding the "school district's policy and practice of teacher-led recitation of the Pledge" unconstitutionally coerced a religious act. *Newdow v. U.S. Congress*, 328 F.3d 466, 490 (2003).

The two circuit cases that remain undisturbed by subsequent Supreme Court

rulings both found the inclusion of "under God" in the national pledge to be constitutional. The Fourth Circuit, in *Myers*, noted that "given the vast number of Establishment Clause cases to come before the Court, *not one Justice has ever suggested that the Pledge is unconstitutional*. In an area of law sometimes marked by befuddlement and lack of agreement, such unanimity is striking." *Myers*, 418 F.3d at 406 (emphasis in original). Defendant cites fourteen Supreme Court justices, including four sitting justices, who have indicated in various opinions that the national pledge is constitutional. Plaintiffs thus ask the Court to overlook the weight of Supreme Court dicta as well as the holdings of the two circuit courts whose opinions on the issue stand today and instead find that the Texas Pledge of Allegiance is unconstitutional.

### 1.  Purpose

For a law to have a secular purpose, it "must be sincere; a law will not pass constitutional muster if the secular purpose articulated by the legislature is merely a sham." *Wallace v. Jaffree*, 472 U.S. 38, 64 (1985). A statute need not have "exclusively secular" objectives, however. *Id.* When the Supreme Court has invalidated a statute because of an illegitimate purpose, "[i]n each case, the government's action was held unconstitutional only because openly available data supported a commonsense conclusion that a religious objective permeated the government's action." *McCreary County v. ACLU*, 545 U.S. 844, 863 (2005). The purpose requirement is rarely

determinative, "presumably because government does not generally act unconstitutionally, with the predominant purpose of advancing religion." *Id.*

Although some individual legislators may have religious motives, an analysis under *Lemon*'s purpose prong only considers the overall legislative purpose of the allegedly unconstitutional provision, not a particular legislator's motive in supporting it. *See Bd. of Educ. of Westside Cmty. Schs. v. Mergens*, 496 U.S. 226, 249 (1990) ("[W]hat is relevant is the legislative *purpose* of the statute, not the possibly religious *motives* of the legislators who enacted the law.").

Plaintiffs allege that any secular purpose articulated by the Texas legislature in inserting the words "under God" is merely pretext for underlying religious motives. They cite the fact that other portions of the national pledge, such as "with liberty and justice for all," were not added to the state pledge.

Defendant counters that if the purpose behind adding the words "under God" to the national pledge is constitutional, then articulating the same purpose to add the same words to the Texas pledge must also be constitutional. The addition, Defendant says, is firmly rooted in history and patriotism. The purpose of both pledges, Defendant states, "is to acknowledge that a belief in a Supreme Being was historically important to the founders of our nation and of the State of Texas."

The bill's sponsor, Rep. Debbie Riddle, stated that her intent was to "make[ ] our

state pledge consistent with the national pledge." Hearing on Tex. H.B. 1034 Before the House Comm. on Culture, Recreation, and Tourism, 80th Leg. R.S. (March 20, 2007). Quoting Texas' 1836 Declaration of Independence from Mexico in 1836, Riddle told the House committee she believed

> that our State, even when it was its own nation, was founded on the belief that we should have the right to acknowledge God. The seventh page of the Texas Declaration of Independence says that Mexico "denies us the right of worshiping the Almighty according to the dictates of our own conscience by the support of a national religion calculated to promote the temporal interest of its human functionaries rather than the glory of a true and living God."

*Id.*

On second reading of the bill, Rep. Riddle said the bill "simply replicates, mirrors our national pledge." H.J. of Tex., 80th Leg., R.S. 3055, 3056 (May 3, 2007). State Sen. Dan Patrick, the bill's Senate sponsor, told the Senate Committee on State Affairs that he saw the state pledge similarly to the national Pledge of Allegiance, citing the Declaration of Independence, the Emancipation Proclamation, and statements by Presidents Franklin Roosevelt and Dwight Eisenhower. Hearing on Tex. H.B. 1034 Before the Senate Comm. on State Affairs, 80th Leg., R.S. (May 14, 2007). Sen. Patrick said, "House Bill 1034 will acknowledge our Judeo-Christian heritage by placing the words 'under God' in the state pledge." *Id.*

Similarly, analyses prepared by the House and Senate research committees

reiterated the sponsors' intent to "acknowledge the state's Judeo-Christian heritage." House Comm. on Culture, Recreation, and Tourism, Bill Analysis, Tex. H.B. 1034, 80th Leg., R.S. (2007); Senate Comm. on State Affairs, Bill Analysis, Tex. H.B. 1034, 80th Leg., R.S. (2007). It also emphasized the intent to reflect the "natural and indefeasible right to worship Almighty God according to the dictates of their own consciences" as stated in the Texas Constitution. *Id.* Similarly, the Senate Research Center explained the author's intent as follows: "Since the founding of the United States through modern times, there has been a link to God in the political and social culture of the United States. . . . Placing the phrase 'under God' in the Texas state pledge may best acknowledge this heritage." Senate Comm. on State Affairs, Bill Analysis, Tex. H.B. 1034, 80th Leg., R.S. (2007).

Plaintiffs offer transcripts of exchanges between Rep. Riddle and other legislators in an attempt to demonstrate a "sham" purpose behind the bill. Yet nowhere in the exchanges does Rep. Riddle articulate a religious purpose for her bill, even when questioned vigorously about it. Instead, she repeatedly reiterated that the language in the bill "mirrors the national pledge."

Plaintiffs also include an exchange in which the bill's sponsor states that she agrees with a statement that "freedom of religion should not be taken as freedom from religion." It is unclear how her position on this statement can demonstrate a religious

purpose behind the bill. In any event, it is not entirely dissimilar from the Supreme Court's admonition that the Establishment Clause "does not say that in every and all aspects there shall be a separation of Church and State." *Zorach*, 343 U.S. at 312. Plaintiffs would have the Court examine a snippet of Rep. Riddle's personal views on the constitutional dimensions of religious freedom to make the leap to find the bill has an overt religious purpose. This argument strays far from the Supreme Court's direction to examine legislative purpose rather than an individual legislator's motives. *See Wallace*, 472 U.S. at 74–75 (O'Connor, J., concurring) (stating that examining legislative intent is a "deferential and limited" inquiry, and courts have "no license to psychoanalyze the legislators").

### 2. Endorsement

The endorsement test "captures the essential command of the Establishment Clause, namely, that government must not make a person's religious beliefs relevant to his or her standing in the political community by conveying a message 'that religion or a particular religious belief is favored or preferred.'" *County of Allegheny v. ACLU Greater Pittsburgh Chapter*, 492 U.S. 573, 627 (1989) (O'Connor, J., concurring). "Endorsement sends a message to nonadherents that they are outsiders, not full members of the political community, and an accompanying message to adherents that they are insiders, favored members of the political community." *Lynch*, 465 U.S. at 688 (O'Connor, J.,

concurring).

This test ties closely to the "purpose" prong of *Lemon*, under which this Court has already found the statute in question passes constitutional muster. Similarly, Justice O'Connor, who championed the endorsement test, explained that the words "under God" in the national Pledge of Allegiance are constitutional. *See Elk Grove Unified School Dist.*, 542 U.S. at 36 ("I believe that petitioner school district's policy of having its teachers lead students in voluntary recitations of the Pledge of Allegiance does not offend the Establishment Clause.").

The Supreme Court has found that the "daily recitation of the Pledge of Allegiance, or even the observance of a moment of reverent silence at the opening of class, may . . . serve the solely secular purposes of the devotional activities without jeopardizing either the religious liberties of any members of the community or the proper degree of separation between the spheres of religion and government." *Sch. Dist. of Abington Twp. v. Schempp*, 374 U.S. 203, 281 (1963); *id.* at 303 ("The reference to divinity in the revised pledge of allegiance, for example, may merely recognize the historical fact that our Nation was believed to have been founded 'under God.'") (Brennan, J., concurring).

If the national Pledge of Allegiance meets the endorsement test, so too does the Texas Pledge of Allegiance, because "it would be incongruous to interpret [the

Establishment Clause] as imposing more stringent limits on the states than the draftsmen imposed upon the federal government." *Van Orden v. Perry*, 545 U.S. 677, 688 (2005) (quoting *Marsh v. Chambers*, 463 U.S. 783, 790–91 (1983)).

There is no evidence that the Texas Pledge of Allegiance unconstitutionally endorses religion through its effect or purpose. And "when all is said and done, the danger that 'under God' in our Pledge of Allegiance will tend to bring about a theocracy or suppress somebody's beliefs is so minuscule as to be *de minimis*. The danger that phrase presents to our First Amendment freedoms is picayune at most." *Newdow v. U.S. Congress*, 292 F.3d 597, 613 (9th Cir. 2002) (Fernandez, J., dissenting).

Supreme Court dicta and the holdings of the circuit courts have found no endorsement in the words "under God." Even if the Supreme Court has not explicitly reached the full merits of an Establishment Clause issue, "an inferior court had best respect what the majority says rather than read between the lines. If the Court proclaims that a practice is consistent with the establishment clause, we take its assurances seriously. If the Justices are just pulling our leg, let them say so." *Sherman v. Comm. Consol. Sch. Dist. 21*, 980 F.2d 437, 448 (7th Cir. 1992).

      3.    **Sectarian Preference**

"The clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another." *Larson v. Valente*, 456 U.S.

228, 244 (1981).

Plaintiffs assert that the inclusion of the words "under God" has the effect of preferring Christian and Jewish beliefs over polytheistic religions, such as Hinduism. "Hindu school children are not allowed to proclaim that Texas is 'one state under gods'. . . ," Plaintiffs assert. Despite the fact that Plaintiffs bring a facial challenge and have not asserted that they subscribe to a polythestic religion, the Court will analyze their claim of a sectarian preference.

In declaring a Christian Christmas display at a county courthouse unconstitutional, the Supreme Court noted that "there is an obvious distinction between creche displays and references to God in the motto and the pledge." *County of Allegheny*, 492 U.S. at 603. The implication is that a Christian creche explicitly favors one religion over another, whereas a generic reference to "God" is far more inclusive. "The Pledge complies with this requirement. It does not refer to a nation 'under Jesus' or 'under Vishnu,' but instead acknowledges religion in a general way: a simple reference to a generic 'God.'" *Elk Grove Unified School Dist.*, 542 U.S. at 42 (O'Connor, J., concurring in judgment).

In Texas, a public elementary or secondary school or an institution of higher education may display the United States national motto, "In God We Trust," in each classroom, auditorium, and cafeteria. TEX. EDUC. CODE § 1.004. The phrase appears

on the nation's money supply. The pledge similarly includes a broad acknowledgment of a divine being, even if it is a singular reference.

Indeed, "one would be hard pressed to imagine a brief solemnizing reference to religion that would adequately encompass every religious belief expressed by any citizen of this Nation." *Elk Grove Unified School Dist.*, 542 U.S. at 42 (O'Connor, J., concurring in judgment). "The phrase 'under God,' . . . represents a tolerable attempt to acknowledge religion and to invoke its solemnizing power without favoring any individual religious sect or belief system." *Id.* Thus the inclusion of "under God" in the Texas pledge cannot be said to explicitly favor one sect over another.

### 4.   Coercion

"It is beyond dispute that, at a minimum, the Constitution guarantees that government may not coerce anyone to support or participate in religion or its exercise." *Lee v. Weisman*, 505 U.S. 577, 587 (1992). Plaintiffs assert that the inclusion of the words "under God" in the Texas Pledge of Allegiance amounts to "psychological coercion" of schoolchildren. Students who are atheist or polytheist would feel coerced into supporting or participating in religion by the recitation of the Texas pledge at the beginning of each school day, Plaintiffs assert.

To be sure, the state may not compel students to recite either pledge. *See West Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943) (finding Jehovah's

Witnesses could not be compelled in school to recite Pledge of Allegiance against their beliefs because "the compulsory flag salute and pledge requires affirmation of a belief and an attitude of mind").

The Texas legislature, however, dealt with this effectively by providing an "opt-out" provision in the statute. *See* TEX. EDUC. CODE § 25.082(c) ("On written request from a student's parent or guardian, a school district shall excuse the student from reciting a pledge of allegiance . . . ."). There is thus no coercion in this optional activity, and the state legislature appears to have considered and followed Supreme Court precedent on this point.

Of course, "there are heightened concerns with protecting freedom of conscience from subtle coercive pressure in the elementary and secondary public schools." *Lee*, 505 U.S. at 592. But the Supreme Court distinguishes between religious exercises like prayers and patriotic activities like reciting a pledge of allegiance, even if it may contain a reference to "God." *See Engel v. Vitale*, 370 U.S. 421, 435 n.21 (1962); *see also Elk Grove Unified Sch. Dist.*, 542 U.S. at 26 (2004) (Rehnquist, C. J., concurring in judgment) ("Examples of patriotic invocations of God and official acknowledgments of religion's role in our Nation's history abound"); *id.* at 35–36 (O'Connor, J., concurring in judgment) ("It is unsurprising that a Nation founded by religious refugees and dedicated to religious freedom should find references to divinity in its symbols, songs, mottoes, and

oaths"). It is no less surprising that a state founded on similar beliefs would incorporate similar language in its pledge.

"Undoubtedly, the Pledge contains a religious phrase, and it is demeaning to persons of any faith to assert that the words 'under God' contain no religious significance." *Myers*, 418 F.3d at 407. Yet simply asserting that the Texas pledge contains a religious phrase does not transform the Texas pledge from a voluntary patriotic act into a compulsory religious prayer. *See id.* at 408 ("[T]he fact that indirect coercion may result from voluntary recitation of the Pledge in school classrooms is of no moment under the Establishment Clause."). "Moreover, as the history of our nation makes clear, acknowledgments of religion by government simply do not threaten to establish religion in the same manner that even voluntary school prayer does." *Id.*

> If reciting the pledge is truly "a religious act" in violation of the Establishment Clause, then so is the recitation of the Constitution itself, the Declaration of Independence, the Gettysburg Address, the National Motto, or the singing of the National Anthem. Such an assertion would make hypocrites out of the Founders and would have the effect of driving any and all references to our religious heritage out of our schools and eventually out of our public life.

*Newdow v. U.S. Congress*, 328 F.3d 466, 473 (9th Cir. 2003) (O'Scannlain, J., dissenting). A voluntary recitation of the Texas Pledge of Allegiance simply does not coerce students in the same way a school-sponsored prayer might.

It is notable that Plaintiffs do not challenge the national Pledge of Allegiance, but

- 19 -

instead assert that the Texas pledge violates the Establishment Clause because of the "recent insertion" of the language. Plaintiffs fail to draw a meaningful distinction between the national Pledge and the Texas state pledge. The simple fact that the insertion occurred recently is a distinction without a difference. If anything, the half-century that has passed since the insertion of "under God" into the national Pledge of Allegiance under President Eisenhower provides the Texas pledge with even deeper historical roots.

Thus, because the Texas Pledge of Allegiance is constitutional and given no factual disputes between the parties, summary judgment is appropriate for Defendant.

IV. Conclusion

For these reasons, Defendant's cross-motion for summary judgment is **GRANTED**. Plaintiffs' motion is **DENIED**. A separate judgment will issue.

**SO ORDERED.**

Signed March 26th, 2009.

*Ed Kinkeade*
ED KINKEADE
UNITED STATES DISTRICT JUDGE